# IN THE COURT OF APPEALS OF IOWA

No. 18-1195
Filed January 9, 2019

**IN THE INTEREST OF T.G.,**
**Minor Child,**

**A.G., Father,**
    Appellant,

**A.M., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother and father appeal the termination of their respective parental rights in their child.  **AFFIRMED ON BOTH APPEALS.**

Zachary C. Priebe of Jeff Carter Law Offices, PC, Des Moines, for appellant father.

Magdalena Reese of Cooper, Goedicke, Reimer & Reese, P.C., West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

Alan and Alexandra each appeal from an order terminating their parental rights in their child T.B. (age 2). The juvenile court terminated Alan's parental rights pursuant to Iowa Code section 232.116(1)(b), (e), and (h) (2018) and Alexandra's parental rights pursuant to section 232.116(1)(h). On appeal, Alan challenges the sufficiency of the evidence supporting termination of his parental rights under section 232.116(b) and (e), and Alexandra challenges the sufficiency of the evidence supporting termination of her parental rights pursuant to section 232.116(1)(h). Both parents argue termination of their parental rights is not in T.B.'s best interest. Finally, Alexandra argues her close bond with T.B. should preclude termination.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established. *See In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018) (setting forth the statutory framework). The burden is on the State to prove by clear and convincing evidence (1) the statutory ground or grounds authorizing the termination of parental rights and (2) termination of parental rights is in the best interest of the child. *See In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

We first address Alan and Alexandra's challenges to the sufficiency of the evidence supporting the statutory grounds authorizing termination of their respective parental rights. With respect to Alan, he challenges the sufficiency of the evidence supporting termination under Iowa Code section 232.116(1)(b) and (e) but does not challenge the sufficiency of the evidence supporting termination

pursuant to section 232.116(1)(h). Alan's failure to challenge the evidence supporting termination under section 232.116(1)(h) constitutes waiver of the issue. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *In re K.R.*, No. 18-0546, 2018 WL 3302207, at *1 (Iowa Ct. App. July 5, 2018); *In re M.K.*, No. 14-0676, 2014 WL 2885366, at *2 (Iowa Ct. App. June 25, 2014). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). There is clear and convincing evidence supporting termination of Alan's parental rights pursuant to section 232.116(1)(h). Because there is sufficient evidence supporting termination pursuant to section 232.116(1)(h), we do not address Alan's challenges to the sufficiency of evidence under paragraphs (b) and (e).

With respect to Alexandra, she contends there is insufficient evidence authorizing termination of her parental rights pursuant to section 232.116(1)(h). She limits her challenge to the fourth element of paragraph (h). That element "require[s] clear and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *E.H.*, 2017 WL 2684420, at *1.

On de novo review, we conclude there is clear and convincing evidence supporting termination of Alexandra's rights pursuant to section 232.116(1)(h). First, Alexandra's ongoing substance abuse impairs her ability to provide adequate care for T.G. When the child was born, the cord blood tested positive for marijuana. While the case was pending, the child was subjected to a hair stat test, which was positive for amphetamine and methamphetamine. Reports showed the

parents used drugs in the child's presence. While Alexandra successfully completed substance-abuse treatment in July 2017, she failed to maintain sobriety. She relapsed and tested positive for methamphetamine as recently as March 2018. Although she received an updated substance-abuse evaluation following her relapse, Alexandra failed to comply with its recommendation for outpatient substance-abuse therapy. At the termination hearing, Alexandra conceded she intended to continue her drug use despite knowing her substance abuse was not in T.G.'s best interest. Alexandra's continued substance abuse creates an appreciable risk of harm to T.G. *See In re A.Z.*, No. 18-1420, 2018 WL 4909831, at *2 (Iowa Ct. App. Oct. 10, 2018) (finding children could not be returned to the mother when she did not address her substance-abuse and mental-health issues); *In re A.W.*, No. 18-0094, 2018 WL 1182618, at *1 (Iowa Ct. App. Mar. 7, 2018) (finding mother's failure to address substance-abuse issues supported termination of her parental rights); *In re C.E.*, No. 15-0835, 2015 WL 5578395, at *1 (Iowa Ct. App. Sept. 23, 2015) (collecting cases finding children could not be returned to parents with unresolved substance-abuse issues).

Second, in addition to her unresolved substance abuse, Alexandra continues to interact with Alan despite directives to cease contact. At the time of termination, there was an active no-contact order between Alan and Alexandra due to Alan's criminal conviction for domestic abuse assault of Alexandra. Alexandra's continued contact with Alan creates an appreciable risk of harm to T.G. *See In re A.S.*, No. 17-1810, 2018 WL 542646, at *1 (Iowa Ct. App. Jan. 24, 2018) (collecting cases concluding a child cannot be returned to a parent who continues to interact with an abusive party).

Third, Alexandra has not addressed her mental-health concerns. She stopped attending counseling sessions at the end of January 2018. Given Alexandra's struggles with sobriety and difficulty maintaining healthy relationships, the importance of her participation in mental-health services cannot be overstated. Alexandra's failure to address her mental health weighs in favor of termination. *See In re J.L.*, No. 18-0324, 2018 WL 1858382, at *2 (Iowa Ct. App. Apr. 18, 2018) (considering mother's unresolved mental-health issues as a factor supporting termination of her parental rights); *In re A.J.*, No. 17-1796, 2018 WL 437766, at *2 (Iowa Ct. App. Jan. 10, 2018) (concluding mother's "untreated mental-health conditions pose a risk of harm" warranting termination); *In re T.H.*, No. 17-1558, 2017 WL 6520731, at *2 (Iowa Ct. App. Dec. 20, 2017) (concluding mother could not provide adequate supervision and care of her children due to unaddressed mental-health conditions).

Fourth, Alexandra does has not have stable shelter to meet the physical needs of the child. She has been nomadic throughout the pendency of this case. For a period of time, she lived with Alan's mother. After moving out, she did not have any place to stay and lived in her car. She then stayed with various friends and family. Eventually, she moved back in with Alan's mother. At the termination hearing, Alexandra reported she lived in a countryside trailer. However, she expressed her desire to move to Washington or possibly California within the next few months to be closer to family. This nomadic and unstable lifestyle is not conducive to caring for a young child. *See In re C.P.*, No. 18-1536, 2018 WL 6131242, at *3 (Iowa Ct. App. Nov. 21, 2018) ("Maintaining stable housing is one of the duties of parenting."); *In re R.C.*, No. 03-1134, 2003 WL 22092677, at *2

(Iowa Ct. App. Sept. 10, 2003) (considering father's "history of unstable housing and employment" when determining his child could not be placed in his care).

Fifth, in addition to her unstable housing, Alexandra has not maintained stable employment. She lost her job shortly after T.G.'s removal and has not maintained consistent employment since that point. She secured a job at a massage facility in mid-August 2017, but she was fired shortly after. Alexandra struggled to find new employment. In March, she claimed she secured a job offer with another massage facility but later indicated she had not heard back from the potential employer. At the time of the termination hearing, Alexandra reported she was self-employed as a massage therapist making roughly $40,000 per year. However, she provided no documentation to support this assertion. Alexandra's inability to maintain employment, in addition to her history of unstable housing, weighs in favor of termination. See *In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) (collecting cases concluding lack of employment and housing demonstrate the inability to provide care for a child).

We next address whether termination of these parents' respective rights is in the best interest of the child. When making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 39.

Both parents contend T.G. would be better served by returning him to Alexandra's care or placing him with relatives. We disagree. As noted above, the evidence shows placing the child with Alexandra poses an appreciable risk of

adjudicatory harm to the child. With respect to relative placement, the parents bear the burden of demonstrating such placement is preferable to termination. *See In re D.M.*, No. 18-0086, 2018 WL 1433104, at *2 (Iowa Ct. App. Mar. 21, 2018). Here, the parents have not identified a willing and *suitable* relative to provide care for T.G.

Alexandra also contends termination of her parental rights is not in T.G.'s best interest because he is not currently in a pre-adoptive home. However, we do not deny an otherwise justified termination simply because an adoptive home is yet to be secured. *See In re T.C.*, 522 N.W.2d 106, 109 (Iowa Ct. App. 1994). Further, the record reflects the department of human services located a possible pre-adoptive home for T.G. and initiated gradual contact between T.G. and the potential adoptive family.

Finally we address Alexandra's claim that her bond with T.G. was strong enough to preclude termination of her parental rights. *See* Iowa Code § 232.116(3)(c) (permitting a court to avoid termination "due the closeness of the parent-child relationship"). It is Alexandra's burden to prove the exception. *See A.S.*, 906 N.W.2d at 475. Even then, granting the exception is "permissive, not mandatory." *Id.* Alexandra did not meet this weighty burden. T.G. has been out of Alexandra's care for more than half of his short life. *See In re A.H.*, No. 17-1717, 2017 WL 6513633, at *2 (Iowa Ct. App. Dec. 20, 2017) (rejecting strength of bond argument where "[b]oth children have been removed from their parents for nearly half of their young lives"); *In re E.C.*, No. 12-0526, 2012 WL 2408005, at *3 (Iowa Ct. App. June 27, 2012) (same). We have no doubt there is a genuine

connection and affection between Alexandra and T.G., but it is not so strong to negate the benefits of termination and T.G.'s placement in a stable home.

In conclusion, there is clear and convincing evidence supporting termination of both parents' parental rights in T.G. Termination of the parents' rights is in T.G.'s best interest. Finally, Alexandra's bond with T.G. is not so strong as to preclude termination of her parental rights.

**AFFIRMED ON BOTH APPEALS.**